HONORABLE RONALD B. LEIGHTON

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| GEORGE E. WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BROOKDALE SENIOR LIVING COMMUNITIES, INC.,<br><br>　　　　　Defendant. | CASE NO. C14-5384 RBL<br><br>ORDER DENYING MOTION TO COMPEL ARBITRATION<br><br>[DKT. #8] |

THIS MATTER is before the court on Defendant Brookdale Senior Living Communities' Motion to Compel Arbitration [Dkt. #8]. In 2010, Plaintiff Lee Lewis's stepdaughter admitted Lewis into one of Brookdale's facilities because she was suffering from dementia. Lewis has since died, and her son, George Williams, has sued Brookdale on her behalf for wrongful death, negligence, and violation of the vulnerable adult statute. Brookdale removed the case to this Court and now asks the Court to compel arbitration under a clause in the contract that Lewis's stepdaughter signed to admit her. Williams argues that the arbitration provision is not enforceable because it was not signed by Lewis or anyone with authority to act on her behalf.

# I. BACKGROUND

In May of 2010, Lee Lewis was checked into Clare Bridge, an assisted living facility owned by Brookdale that specializes in patients with dementia. Lewis was admitted by her stepdaughter, Michelle Walker, because she was not able to do so herself.

Brookdale's admittance paperwork required Walker to state the source of her authority to sign for Lewis, and to provide a copy of the documentation granting her authority. Walker had power of attorney over her father, but not over Lewis. Lewis had not granted anyone power of attorney. Brookdale received and apparently accepted a copy of Walker's power of attorney over her father, but it never obtained any documentation demonstrating that Walker had authority to bind her. Still, Walker signed all of the admittance documents in the presence of Lewis. On each document she signed as either Lewis's "legal representative," "legally responsible party," or "responsible party" [Dkt. 10, Exh's A-H].

Among the documents signed by Walker as Lewis's "legal representative" was a residency agreement, which contained a clause requiring arbitration of claims like those now asserted on Lewis's behalf. Resident Agreement, p. 7 [Dkt. 10 Exh. B].

Shortly after Brookdale admitted Lewis, Williams (her son), attempted to remove her from the facility and transfer her to a facility nearer to his home. Williams claims that Brookdale would not release Lewis unless Williams got a valid power of attorney from her. Williams spoke with his own attorney who told him that his mother was not mentally capable of granting power of attorney to him.

Lewis died at Clare Bridge in September of 2011. Williams sued Brookdale on behalf of Lewis's estate, alleging wrongful death, negligence, and violation of the vulnerable adult statute.

Brookdale now seeks to enforce the arbitration clause in Lewis's residency agreement. Brookdale argues that Walker signed a valid arbitration agreement on Lewis's behalf as her legal representative. It contends that Walker was Lewis's agent acting with implied and apparent authority. Brookdale also argues that Lewis's family "essentially ratified" the residency agreement [Dkt. 18].

Williams concedes that the arbitration clause would be valid and enforceable if his mother had signed it. He asserts, however, that Lewis never agreed to arbitration. He argues that Walker never had authority to act on Lewis's behalf, and that Lewis was not capable of granting such authority to her.   He asks the Court to deny the motion to compel arbitration.

## II.    DISCUSSION

### A.    Standard for Compelling Arbitration

Although public policy favors arbitration, a party may not be compelled to arbitrate when he has not agreed to submit to arbitration. *See Rimov v. Schultz*, 162 Wn. App. 274, 285, 253 P.3d 462 (2011). Williams contends that Lewis never signed anything and thus, never agreed to arbitrate her claims. Brookdale responds that Lewis can be compelled to arbitrate because she agreed to it through her agent, Walker. It argues that Walker had implied authority and apparent authority to agree to arbitration on Lewis's behalf.  Brookdale also argues that Lewis's family agreed on her behalf by ratifying the contract.

### B.    Implied Actual Authority

Brookdale argues that Walker had implied actual authority to act on Lewis's behalf because she consistently signed documents for her mother.

Implied actual authority is granted where the circumstances show that the principal intended the agent to possess authority. *King v. Riveland*, 125 Wash. 2d 500, 507 (1994). It is often found where the principal knew and accepted that the agent consistently exercised

authority not expressly granted: "[T]he most usual example of implied actual authority is found in those instances where the agent has consistently exercised some power not expressly given to the agent and the principal, knowing of the same and making no objection, has tacitly sanctioned continuation of the practice." *Id.*

Brookdale argues that Walker signed multiple forms in front of Lewis and that that constitutes consistent exercise of the power to do so, and a and tacit sanctioning of it. It lists a number of admittance forms that Walker signed in front of Lewis, and points out that Lewis never objected to Walker signing on her behalf.

Williams responds that Lewis did not have the ability to sanction Walker's actions. Lewis was admitted because of her dementia, and Brookdale knew about her condition. There is no evidence that she knew what Walker was signing, let alone that she was signing on her behalf.

Furthermore, there is no evidence that Lewis had ever allowed Walker to sign for her before she signed the Brookdale forms. Implied authority requires Walker to have "consistently" exercised the authority. Signing multiple documents on Lewis's behalf at one time does not constitute consistent exercise of authority.

**C.    Apparent Authority**

Brookdale also contends that Walker had apparent authority to sign for Lewis because children often sign for their parents, and because Lewis allowed it to happen in front of Brookdale employees.

Apparent authority arises when the principal has placed the agent in such a position that a third party reasonably believed the agent had authority based on the customs of the third party's business. *Schoonover v. Carpet World, Inc.*, 91 Wash. 2d 173, 1767-77 (1978). It is the principal's actions or inactions that must give the other party reason to believe that authority

exists. Although the principal does not need to make any explicit statements to the third party, apparent authority requires evidence that the principal was at least aware of its agent's actions: "While apparent authority can be inferred from the principal's actions, there must be evidence the principal had knowledge of the act which was being committed by its agent." *State v. Parada* 75, Wash. App. 224, 231 (Div. 1 1994) (citations omitted).

Brookdale's apparent authority argument is not persuasive because there is no evidence that Lewis could comprehend the situation and grant authority. Again, the very reason Lewis was being admitted was because she had dementia. There is no evidence that she knew what Walker was signing, let alone that she was signing on her behalf.

Brookdale also argues that children regularly sign for their parents, which, in combination with Lewis's failure to object, lead Brookdale to believe that Walker had authority. The Brookdale paperwork itself contradicts this statement: it requires those signing as the "legally responsible party" to identify the source of their authority to act for the resident. [Dkt. 10, Exh. E, F] Signors are also required to provide proof of that authority, getting help from the legal department if they have questions. *Id.*; [Dkt. 19, Exh. A]. That Brookdale required proof of authority, even from a patient's children, is also demonstrated by the fact that Brookdale told Williams that he could not remove his mother from the facility without a power of attorney.

Furthermore, when it admitted Lewis, Brookdale *did* require and obtain copies of Walker's power of attorney over Lewis's husband. If Brookdale's business customs regularly allowed children to sign for their parents, there would have been no need for the documentation Walker provided. Brookdale relied on Walker's documented authority over her father, but Walker did not have and Brookdale did not obtain documents showing power of attorney over Lewis as required by Brookdale's business practices.

**D.   Ratification**

Brookdale argues in its reply brief that the residency contract was "essentially ratified" by Lewis's family. Ratification occurs when an agent acts without authority and the principal, upon later discovering the mistake of the agent, accepts the results: "A person ratifies a contract if, after discovery of the facts that would warrant rescission, he or she is silent or continues to accept benefits under the contract." Hooper v. Yakima Cnty. 79 Wash. App. 770, 775-76 (Div. 3 1995). The analysis, as with apparent and implied authority, is on the principal's actions.

Brookdale argues that Lewis's family, by not objecting to the contract earlier and by allowing Lewis to stay at Clare Bridge, ratified the contract. Setting aside the fact that Williams did try to remove his mother, only the principal, Lewis—and not her family—could ratify the contract. Ratification requires some knowing action or inaction by the principal. The ratification argument is not persuasive.

### III.   CONCLUSION

The residency agreement containing the arbitration clause that Brookdale seeks to enforce was never signed by Lewis or anyone with the authority to act on her behalf. Therefore, Lewis never agreed to arbitration. Brookdale's Motion to Compel Arbitration [Dkt. 8] is DENIED.

IT IS SO ORDERED.

Dated this 22nd day of July, 2014.

*[signature]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE